**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LIDIA JAZMIN CASTANEDA, *also known as*
LIDIA JAZMIN GALLEGOS,

       Plaintiff,

v.                                           Civ 2:15-cv-0847 JCH/CG

JOHN DANIEL GALLEGOS,

       Defendant.

## ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Petitioner's *Motion for Temporary Restraining Order*. [Doc. 6]. Having considered the motion, briefs, record, and relevant law, the Court will deny Petitioner's request for a temporary restraining order. The Court will, however, set a status conference to discuss setting an expedited hearing on the merits of this case.

## PROCEDURAL HISTORY

On September 23, 2015, Plaintiff/Petitioner Lidia Jazmin Castaneda ("Petitioner") filed a Verified Complaint and Petition for Return of Child ("Complaint"), [Doc. 1], seeking a judgment ordering that her eight-year-old daughter ("J.G.") be returned to Mexico to reside with Petitioner. Presently, J.G. is residing with Defendant/Respondent John Daniel Gallegos ("Respondent"), who is listed as J.G.'s father on J.G.'s birth certificate but is not J.G.'s natural father according to the Complaint.

A Summons Returned Executed was filed on October 22, 2015, indicating that Respondent was personally served on October 15, 2015, at 321 Jung Sun Lane, Chaparral, New Mexico 88081. [Doc. 4]. Petitioner filed her Motion for Temporary

Restraining Order on October 27, 2015.  [Doc. 6].  On October 28, 2015, Petitioner filed

an Information Sheet for T.R.O. noting the requested relief of "[p]revent[ing] Respondent

from removing [J.G.] from New Mexico, and [to] bring [J.G.] before the Court to

determine where [J.G.] should reside during [the] pendency of the case."  [Doc. 9].  The

Information Sheet indicates that Petitioner is requesting a hearing within ten days and

indicates that it was mailed on October 27, 2015, to Respondent at the Jung Sun

address.

## FACTUAL BACKGROUND

Petitioner and Respondent were married in El Paso, TX in October 2006.  [Doc. 1

at ¶ 6].  J.G. was born in the United States several months later in December 2006. [*Id.*;

Doc. 6 at 2].  Respondent is not J.G.'s biological father but is nonetheless listed on

J.G.'s birth certificate as her father.  [Doc. 1 at ¶ 6].  The parties lived together in New

Mexico and, temporarily, in Mexico.  [*Id.* at ¶ 7].  They have not been divorced.  [Doc. 6

at 2].

In September and October of 2010, Petitioner and Respondent filed domestic

violence petitions against each other in separate district courts in New Mexico.  [Doc. 1

at ¶ 8].  Petitioner filed in Dona Ana County; Respondent in Otero County.  [*Id.*].  The

Dona Ana County court acted first, entering an order affording alternating custody of

J.G. to each party.  [*Id.*].  Two days after the Dona Ana County action was dismissed,

the Otero County court entered an order granting temporary custody of J.G. to

Respondent that was set to expire on April 21, 2011.  [*Id.*]

Petitioner had notice of, but did not attend, the Otero County proceedings.  [*Id.*].

Before the hearing on the Otero County petition took place on October 21, 2010,

Petitioner fled to Juarez, Mexico with J.G., who was almost three years old at the time. Petitioner is without immigration status in this country, and alleges that she fled to Mexico because Respondent and his mother told Petitioner they would report her to the authorities as being in the country illegally and she would be deported. [*Id.* at ¶ 9].

J.G. resided with Petitioner in Juarez, Mexico from October 2010 until about September 16, 2012. [*Id.* at ¶ 10]. In September 2012, Respondent went to visit J.G. in Mexico. During that visit, Petitioner abducted J.G., who was almost six years old at the time, and returned her to the United States without Petitioner's knowledge and against Petitioner's wishes. [*Id.* at ¶ 11]. Respondent, who is believed to reside with his mother and J.G. in Chaparral, NM, has refused to return J.G. to Mexico despite Petitioner's requests that he do so. [*Id.* at ¶ 12].

Petitioner became aware of her rights under the Hague Convention in mid-2013. [*Id.* at ¶ 14]. In December 2013, Petitioner submitted a request for the return of J.G. to the United States Department of State ("State Department") that was made through the Foreign Relations Department of the United States of Mexico. [*Id.* at ¶ 13]. In January 2014, the State Department received the request. In February 2014, the State Department asked Respondent to return J.G. to Petitioner. In March 2014, Respondent responded to the State Department, stating that he refused to return J.G. to Mexico. Between April 2014 and September 2015, the State Department sought an attorney to handle the case *pro bono*. [*Id.* at ¶ 14]. This suit followed.

## LEGAL STANDARDS

The decision to grant a temporary restraining order is within the Court's discretion. *See Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1205 (10th Cir.

2003).  To obtain a restraining order, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest."  *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009) (internal quotation marks omitted).

## DISCUSSION

Petitioner's *Motion for Temporary Restraining Order* argues that she is entitled to the following: (1) an immediate order prohibiting J.G. from being removed from the jurisdiction of this Court before a determination on the merits of the Complaint is made; (2) an immediate order requiring Respondent to bring J.G. to the Court (a) so the Court can ensure she is safe, (b) so a determination of where J.G. should reside during the pendency of this litigation can be made, and (c) so J.G. can be interviewed by a child psychologist or other professional; (3) an expedited preliminary injunction hearing at which Respondent be ordered to show cause why the Child should not be returned to Mexico and consolidation of that hearing with a trial on the merits; and (4) a waiver or shortening of time limits on filing and responding to motions.  [Doc. 6 at 10].  Petitioner mailed her motion to Respondent on October 27, 2015.  [Doc. 9].  Respondent has yet to make an appearance in this case and his answer to the Petition is due November 9, 2015.  [Doc. 4].

### A.   Likelihood of Success on the Merits

The Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), T.I.A.S. No. 11670, 1988 WL 41150, as implemented by the International

Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 *et seq*, "seeks to deter parents who are dissatisfied with current custodial arrangements from abducting their children and seeking a more favorable custodial ruling in another country." *Navani v. Shahani*, 496 F.3d 1121, 1124 (10th Cir. 2007). To establish a violation, the petitioner must establish that: "(1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention." *Shealy v. Shealy*, 295 F.3d 1117, 1122 (10th Cir. 2002). The petitioner bears the burden of making this showing by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A). Thereafter, the burden shifts to the respondent to establish one of several affirmative defenses either by a preponderance of the evidence or by clear and convincing evidence, depending on the defense asserted. 22 U.S.C. § 9003(e)(2).

> 1. *J.G.'s Habitual Residence at the time of Removal was Juarez, Mexico*

"[H]abitual residence is defined by examining specific facts and circumstances and is a term courts should not interpret technically or restrictively." *Kanth v. Kanth*, No 99-4246, 232 F.3d 901, at *1 (10th Cir. Nov. 2, 2000) (unpublished) (citation omitted). The question is usually whether a child "has been physically present [in a location] for an amount of time sufficient for acclimatization, and which has a settled purpose from his perspective." *Carrasco v. Carrillo-Castro*, 862 F. Supp. 2d 1262, 1271 (D.N.M. May 29, 2012) (Vazquez, J.) (citing *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995)); *see also Avendano,* 806 F. Supp. 2d at 1172 (Browning, J.) (same). However, where young children are involved, the Tenth Circuit has advised that "the conduct, intentions,

and agreements of the parents during the time preceding the abduction are important factors to be considered." *Kanth,* 232 F.3d 901 at *1.1

Petitioner asserts that, at the time of J.G.'s removal, J.G. had been living in Juarez for nearly two years and was enrolled in preschool. [Doc. 6 at 6]. The Court agrees that nearly two years' time is sufficient for a child to acclimatize to their residence. Additionally, having lived in Juarez, Mexico from the time she was almost four to the time she was almost six, and having started school there, J.G. would likely perceive Juarez as a location with a settled purpose. Moreover, the fact that Respondent was merely visiting J.G. in Mexico when he abducted her implies that the parties had some understanding that J.G. was to remain in Mexico. Thus, on the record before the Court, Petitioner has demonstrated that J.G.'s habitual residence at the time of removal in September 2012 was Juarez, Mexico.

### 2. *Petitioner was exercising her Custody Rights under Mexican Law*

Having determined that J.G.'s habitual residence was likely Juarez, Mexico, the next questions are whether her removal was in breach of Petitioner's custody rights under applicable Mexican law and whether Petitioner was exercising those rights at the time of removal. *Shealy*, 295 F.3d at 1122. Petitioner asserts that "by virtue of Mexican law . . . Petitioner has custodial rights to [J.G.]. See Civil Code for the State of Chihuahua, Articles 390, 391 and 393, attached hereto as Exhibit A." Petitioner failed to attach any exhibits to her Motion. However, this district has previously recognized that the Mexican law doctrine of *patria potestas*, as set forth in various Mexican states, including Chihuahua, "'implies a meaningful, decision making role in the life and care of

---

1 The court in *Kanth* considered a child who was six years old at the time of the alleged wrongful removal to be "young," *Kanth*, 232 F.3d 901 at *1, n. 1. J.G., who was born in December 2006 and was removed to the United States in September 2012, was, therefore, also a young child when she was removed.

the child,' . . . [and] is sufficient to establish . . . rights of custody for purposes of the

Hague Convention." *Carasco*, 862 F. Supp. 2d at 1274 (citations omitted) (applying the

Civil Code for the State of Chihuahua); *see also In re the Application Gonzalez v.*

*Batres*, Civ. No. 14-00799 WJ/CG, at *14-15 (D.N.M., filed on Jan. 12, 2012)

(unpublished) (collecting cases in Findings of Fact and Conclusions of Law that had

applied the doctrine of *patria potestas*).  Under the doctrine, "parental

authority/responsibility over children will be exerted by the father and mother . . . [and]

those who exert parental authority/responsibility have a right to coexist (spend time)

with their children . . . ." *Carrasco*, 862 F. Supp. 2d at 1274.

At the time of J.G.'s removal, she was living with Petitioner, who supported and

cared for her, and sent her to school.  As such, the Court finds that Petitioner retained

custody rights under Mexican law and further finds that she was exercising those rights

at the time of removal.  *Id.* at 1275 ("[I]f a person has valid custody rights to a child

under the law of the country of the child's habitual residence, that person cannot fail to

exercise those custody rights under the Hague Convention short of acts that constitute

clear and unequivocal abandonment of the child." (internal quotation marks omitted)).

Because Petitioner has put forth sufficient facts demonstrating J.G.'s habitual

residence was in Juarez, Mexico and that Petitioner was exercising her parental rights

under applicable Mexican law, Petitioner has established a likelihood of success on the

merits.

### B.   Likelihood of Irreparable Harm without Preliminary Relief

As to the likelihood of irreparable harm without a temporary restraining order,

Petitioner raises concerns over Respondent fleeing with J.G.  Specifically, Petitioner

states, "Given that Respondent has already wrongfully removed [J.G.] to the United States and impeded Petitioner's attempt to recover [J.G.] by refusing to return her, there is an obvious risk that Respondent will hide [J.G.] or remove [J.G.] from the jurisdiction of this Court."  [Doc. 6 at 7].  Although the Court is mindful that there is a possibility of this happening, the Court is not convinced that, under the circumstances, the risk is so "obvious" as to be likely to materialize.

First, Respondent and J.G. have remained in Chaparral for more than three years. [*Id.* at 3] ("Since her abduction, the Child has been living with Respondent and/or his mother in Chaparral, New Mexico.  Respondent has failed and refused to return [J.G.] to Petitioner, despite requests from Petitioner.").  Although Respondent removed J.G. from Mexico without Petitioner's consent and refuses to return her, the manner in which J.G. ended up in Mexico cannot be overlooked.  Petitioner, notwithstanding a New Mexico state court order granting Respondent alternating custody, fled to Mexico from the United States with J.G. in October 2010.  While Petitioner's doing so is understandable and the legal appropriateness of those actions are not before the Court, the context in which Respondent removed J.G. back to the United States informs whether he is likely to attempt to evade this litigation.

Moreover, since returning with J.G. to the United States, Respondent has chosen to remain in Chaparral despite requests to return J.G. to Mexico from both Petitioner and the State Department.  Seemingly, had Respondent been interested in assuring J.G. remained in the United States, legally or not, he would have taken measures to prevent Petitioner and the State Department from contacting him.  He certainly would not have responded to either.  Additionally, in choosing to respond to the State

8

Department, rather than flee with J.G., Respondent demonstrated a belief that he has at least some tenable legal claim to custody over J.G.  This is bolstered by the fact that he prevailed, at least in part, in two separate New Mexico state court proceedings that granted him some form of custody.  Finally, and importantly, Petitioner has given no indication that Respondent has made any threat to flee nor has she presented any information about Respondent's background that would suggest he is likely to flee. Thus, this is not a case in which one parent blatantly violates an explicit custody arrangement and is, or has been, on the run with a child, thereby warranting the issuance of a temporary restraining order.  *See Nixon v. Nixon*, Civ. No. 11-0890 MV/LFG, at *2 (D.N.M., filed on Oct. 7, 2011) (unpublished) (order denying temporary restraining order where "Respondent intend[ed] to remain in New Mexico, and . . . Respondent's attorney was notified by telephone . . . of Petitioner's Motion.").

In addition to the above factual circumstances, the manner in which Petitioner has proceeded in this litigation undercuts her assertion of urgently needing a restraining order.  Petitioner waited more than a month after filing her Petition before seeking a temporary restraining order.  In the intervening time, she served Respondent with her Petition, thereby ensuring his awareness of this litigation, and yet still waited ten days before she moved for a temporary restraining order.  [*See* Docs. 4, 6].  If Petitioner was concerned at the outset about Respondent leaving, it is curious that she would afford him at least ten days' notice before even raising the issue in court.  Petitioner also has not offered any suggestion that concerns have arisen over Respondent remaining in New Mexico since she served him with the Petition.  Finally, the Court notes that Petitioner has requested a hearing on her Motion by no later than November 6, 2015,

[Doc. 9], which is only three days before Respondent's Answer is due on November 9, 2015, [Doc. 4].  Again, were Petitioner concerned about Respondent fleeing she would not have sought a hearing on a temporary restraining order a mere three days before Respondent is due to respond to this litigation.

Further still, because Respondent has been served, the Court is now vested with jurisdiction over him.  *Hukill v. Oklahoma Native American Domestic Violence Coalition*, 542 F.3d 794, 797 (10th Cir. 2008) ("[S]ervice of process [under Fed.R.Civ.P. 4] provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served") (brackets in original). Should Respondent choose to evade this litigation, he would be subject to an order entering default judgment against him and mandating the return of J.G. to Petitioner.  *See id.*; FED. R. CIV. P. 55.  Petitioner's actions in this litigation and the fact that this Court already has jurisdiction over Respondent, undercuts her assertion that a restraining order is necessary to abate the risk of Respondent fleeing.

To summarize, since removing J.G. to New Mexico, Respondent has remained in the same place, has not threatened to leave, and Petitioner has not pointed to facts indicating that Respondent has become a flight risk since removing J.G. To the contrary, Respondent's responsiveness to Petitioner and the State Department suggest that he is not inclined to leave and believes he has a tenable legal claim.  Furthermore, Petitioner's delay in seeking a temporary restraining order indicates that she did not initially consider him to be a flight risk and she has not offered any reason to believe he has become one since she initiated this litigation.  Finally, Respondent is bound to proceed in this litigation and faces serious consequences should he choose not to

participate.  For these reasons, Petitioner has not made a showing of a likelihood of irreparable harm in the absence of a temporary restraining order.

### C.   Balance of Equities

Petitioner requests, among other things, that Respondent be required to bring J.G. before the Court, that the Court prohibit Respondent from removing J.G. from New Mexico, and that, when J.G. is brought before the Court, "she be allowed to reside with Petitioner's sister in Deming, N.M. . . . [to] ensure [J.G.] will not be removed from the jurisdiction or hidden by Respondent."  [Doc. 6 at 9].  Petitioner has not offered any reason to believe that J.G. is being, or has been harmed while in Respondent's care such that Respondent should be required to immediately bring J.G. before the Court.  Moreover, Petitioner has also not made the required showing under ICARA for J.G. to be removed from her current residence in Chaparral.  22 U.S.C. § 9004(b) (disallowing courts from "order[ing] a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied.").  Even assuming Petitioner had established that J.G. could be removed from Respondent, displacing J.G. from Respondent's home where she has resided for the last three years would cause harm to Respondent, who has previously been granted custody rights over J.G.  In light of the above, the Court finds that the balance of equities do not tip in Petitioner's favor.

### D.   Public Interest

The public has an apparent interest in ensuring that the rights of parents be determined in accordance with the law.  The public also has an interest in ensuring that "the Hague Convention's objective of protecting children from the law of 'grab and run'" is realized. *Ohlander v. Larson*, 114 F.3d 1531, 1547 (10th Cir. 1997) (Murphy, J.,

dissenting).  Although entering a temporary restraining order to ensure this matter is adjudicated on its merits would not be contrary to the public interest, for the reasons set forth above, Petitioner has not carried her burden in demonstrating that such an order is necessary.

## **CONCLUSION**

While some of the factors above weigh in favor of Petitioner, and while the Court is sympathetic to Petitioner's concerns, Petitioner has not sufficiently established that a temporary restraining order is necessary to prevent her from suffering irreparable harm.

**IT IS THEREFORE ORDERED THAT:**

(1) Petitioner's *Motion for Temporary Restraining Order* [Doc. 6] is **DENIED**;

(2) A telephonic status conference will be set and noticed to discuss setting an expedited hearing on the merits of this case.

_____
UNITED STATES DISTRICT JUDGE

12