# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**LIDIA JAZMIN CASTANEDA,**
aka **LIDIA JAZMIN GALLEGOS,**

      Plaintiff,

vs.                                                    Civ. No. 15-00847 JCH/CG

**JOHN DANIEL GALLEGOS,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on what the Court has construed to be a *pro se* motion to set aside default judgment [Doc. 23] by Defendant, John Daniel Gallegos. After reviewing the motion, the Plaintiff's response [Doc. 29] and the letter that the Court has construed as Defendant's reply [Doc. 30], the Court concludes that Defendant has not made the showing necessary under Rule 60(b) for this Court to set aside the default judgment [Doc. 22].

## PROCEDURAL HISTORY

The Court set forth the procedural history of this case in its Sealed Findings of Fact and Conclusions of Law [Doc. 21], entered December 22, 2015, and incorporates them herein. On December 22, 2015, the Court entered its Default Judgment [Doc. 22] against Defendant, John Daniel Gallegos (the father of the child at issue), and in favor of Plaintiff, Lidia Jazmin Castaneda (the mother), on the claims brought forth in the Complaint. On January 4, 2016, the Court received a letter from Gallegos, which it construed as a Rule 60(b) motion for relief from

the judgment, or a Rule 55(c) motion to set aside the default judgment.[1] As a result, on January 6, 2016, the Court entered an Order Staying Judgment [Doc. 26] until such time as the Court could properly consider Gallegos' motion. As of this time, the motion to set aside default judgment is fully briefed.

## DISCUSSION

Under Rule 55(c) of the Federal Rules of Civil Procedure, courts "may set aside an entry of default for good cause," or they may do so for one of the reasons enumerated in Rule 60(b). Fed. R. Civ. P. 55(c). Whether the Court should apply Rule 55(c) or Rule 60(b) depends on the nature of the judgment itself. The notes to the 2015 amendment to Rule 55 provide guidance:

> A default judgment that does not dispose of all of the claims among all parties is not a final judgment unless the court directs entry of final judgment under Rule 54(b). Until final judgment is entered, Rule 54(b) allows revision of the default judgment at any time. The demanding standards set by Rule 60(b) apply only in seeking relief from a final judgment.

Thus, the first question before the Court is whether the Default Judgment [Doc. 22] entered by this Court was, in fact, a final judgment disposing of all the claims among all the parties. Castaneda's sole claim under the Complaint was under the Hague Convention, T.I.A.S. No. 11670, 1988 WL 41150, as well as its corresponding United States law, the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 *et seq.*, for return of the minor child to Mexico,

---

[1] Because Plaintiff is proceeding *pro se*, the Court construes his pleadings and filings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). On the other hand, the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (internal quotation marks omitted). Thus, although the court makes some allowances for a pro se party's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements [,]" *Hall*, 935 F.2d at 1110, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record. *See id*. ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").

where custody of the child can be litigated in Mexican courts. The Court holds that indeed it was a final judgment, as it adjudicated this issue and left no claims pending between the parties. As a result, in order to set aside the judgment, Gallegos must satisfy at least one of the criteria set forth in Rule 60(b).

> Rule 60(b) provides:
>
> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Reading Gallegos' letter to the Court broadly, the Court concludes that it could be interpreted to assert grounds for relieve under subsections (1), (3), or (6) of Rule 60(b). The Court addresses each in turn.

I.     **Excusable Neglect Under Rule 60(b)(1)**

Rule 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment . . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . ." It "is an extraordinary procedure" which "'seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'" *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (quoting *Seven Elves, Inc. v. Eskenazi*,

635 F.2d 396, 401 (5th Cir. 1981) (additional internal quotation marks omitted)). The rule "should be liberally construed when substantial justice will thus be served." *Id*.

"The guidelines governing a district court's consideration of a Rule 60(b)(1) motion ... are well established." *Id*. at 1445. Whether the movant has demonstrated "mistake, inadvertence, surprise, or excusable neglect" is an issue to be "litigated on the merits." *Id*. "The trial court must determine whether excusable neglect has in fact been established, resolving all doubts in favor of the party seeking relief." *Id*. "[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which failure to comply with a . . . deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993). More generally, "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to esp[ecially] through carelessness.' The word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id*. at 388 (quoting Webster's Ninth New Collegiate Dictionary 791 (1983) and adding emphasis).

The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (discussing application of the excusable neglect standard of Fed. R. Bankr. P.R. 9006(b)(1)). Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id*. "'[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining

whether neglect is excusable.'" *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)).

"In the case of default judgments, courts have established the further requirement that a movant demonstrate the existence of a meritorious defense." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978); *Cessna Fin. Corp.*, 715 F.2d at 1444-45 (discussing, in the context of a motion to set aside a default judgment, the need to avoid frivolous litigation). However, the court reaches the question of whether the movant has a meritorious defense <u>only</u> if he first meets his burden of demonstrating excusable neglect. *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011). The parties do not litigate the truth of the claimed defense, but rather "the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action." *In re Stone*, 588 F.2d at 1319. The court must accept as true the facts and circumstances supporting the movant's defense. *Id*. "Thus the focus is on the sufficiency of the factual statement contained in the moving papers," which must be "more than mere legal conclusions, general denials, or simple assertions that the movant has a meritorious defense." *Id*.

With these legal principles in mind, the Court turns to the specific circumstances of this case. Gallegos states in his motion [Doc. 23] that he failed to answer the complaint or otherwise appear in the case until after default judgment was entered because he was threatened by "people from [Castaneda's] family or her new husband that if I try and do anything they would hurt me or my family." *Id*. at 1. He states that he received phone calls with death threats, but does not state when he received those calls, who the callers were, or specifically what they said to him. Gallegos states that he has "pictures of who [Castaneda] hangs out with, who she married and what he does," but he neither provides those photographs to the Court nor describes their

contents. Gallegos states that while he was working in Andrews, Texas, someone beat him up and said, "This is just a little taste of what's going to happen to you if you don't give Jazmin her daughter." *Id*. at 3. However, Gallegos does not say when this occurred in relation to this lawsuit or provide any evidence of who the offenders were or what their link to Castaneda may be. Next, Gallegos asserts that a male friend of Castaneda offered to help Gallegos prove the bad things Castaneda was doing because their daughter "would not have a good life in Mexico." However, Gallegos does not identify this individual or provide an affidavit from him, so the Court simply cannot credit these vague allegations. In the remainder of the motion Gallegos continues to assert alleged threats by Castaneda's family members and the reasons he believes Castaneda would not be a fit parent to their daughter and that the child would not be safe in Mexico.

As explained above, the Court should consider several relevant factors in determining whether Gallegos' failure to answer the Complaint is excusable.

### A. Danger of Prejudice to Castaneda

First, the Court considers the danger of prejudice to the opposing party. Though this factor is not overwhelming, it does weigh slightly against finding excusable neglect, as arguably Castaneda is prejudiced by the delays in obtaining a final resolution of her claim under the Hague convention, as well as the waste of effort and resources in doing the work of obtaining a default judgment only to have to begin the case anew. In addition, Gallegos' delay in answering has, in turn, delayed Castaneda's ability to seek a ruling on custody in a court of law.

### B. Length of the Delay and Its Potential Impact on Judicial Proceedings

Here, despite being properly served with the Complaint and having notice of Castaneda's motion for temporary restraining order, Gallegos ignored these proceedings for more than two

and a half months, finally acting only when he realized the consequences of his actions. The length of the delay in answering weighs against finding excusable neglect.

### C.      Reason for Delay

One of the most important factors in evaluating excusable neglect is the reason for the delay. *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) ("[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable."). As explained above, Gallegos has come forward with a number of assertions about threats he received which he attributes to Castaneda and her associates (and which he claims placed him in fear of responding to Castaneda's complaint), but as previously discussed his assertions are rather vague and without evidentiary support. He makes allegations regarding witness statements, beatings, and photographs, but comes forward with no evidence to support those allegations.

Furthermore, while Gallegos contends that he ignored this case because he felt that his safety and the safety of his family were in jeopardy, he has not explained how that threat has abated such that he can safely come forward now. In other words, if Gallegos can participate in this case now, he could have done so prior to entry of the default judgment because, as far as the record shows, nothing has changed with regard to the alleged threat to his family.

Thus, the Court concludes that Gallegos has not shown adequate reason for his delay in coming forward.

### D.      Whether Gallegos Acted In Good Faith

The Court concludes that, on the record currently before it, Gallegos did not act in good faith in failing to respond to the Complaint or the motion for temporary restraining order ("TRO"). The Court draws this conclusion from the fact that there is no suggestion that Gallegos

feels any less threatened by Castaneda now than he did in October and November of 2015, when he should have been answering the Complaint and responding to the motion for TRO. Rather, the implication is that until the Court entered the default judgment, Gallegos did not take this case seriously and believed he could ignore it. This simply does not meet the necessary showing of good faith on his part.

For all the foregoing reasons, the Court concludes that Gallegos has failed to show excusable neglect under Rule 60(b)(1).

## II.     Misconduct By An Opposing Party Under Rule 60(b)(3)

Rule 60(b)(3) allows a court to relieve a party from a final judgment based on "fraud . . . , misrepresentation, or other misconduct of an adverse party." Regardless of the specific form of the allegation, the party relying on Rule 60(b)(3) must, by adequate proof, clearly substantiate the claim of fraud, misconduct or misrepresentation. *Wilkin v. Sunbeam Corp.*, 466 F.2d 714, 717 (10th Cir. 1972). In other words, "they must show 'clear and convincing proof' of fraud, misrepresentation, or misconduct." *Cummings v. General Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004), *abrogated on other grounds*, *Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006). *See Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999); *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 952 (10th Cir. 1990). Moreover, "the challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Woodworker's Supply Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal quotation omitted); *Cummings*, 365 F.3d at 955. Subsection (b)(3) "is aimed at judgments which were unfairly obtained, not at those which are

factually incorrect," which may be remedied under subsections (b)(1) or (2). *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978).

As explained above, Gallegos has not come forward with any proof, much less clear and convincing proof, that Castaneda is responsible for the alleged threats and harassment or that such threats and harassment have substantially interfered with his ability to respond to her Complaint in this case.

### III.    Any Other Reason Under Rule 60(b)(6)

Rule 60(b)(6) "is a catchall provision, allowing relief from judgment for 'any other reason justifying relief.'" *Davis v. Kan. Dep't of Corr.*, 507 F.3d 1246, 1248 (10th Cir. 2007). "Relief under Rule 60(b)(6) is extraordinary and may only be granted in exceptional circumstances." *Id.* at 1248 (quotation omitted). The Court finds no such exceptional circumstances here.

### IV.    Request for Appointed Counsel

Gallegos asks the Court to appoint counsel to represent him in this matter. However, there is no established right to the appointment of counsel for a defendant in a civil case such as this. Gallegos is not a prisoner, nor does he bring any type of civil rights claim. He makes no showing of indigence. Finally, Gallegos' request is moot, the Court having already entered default judgment and deciding against Gallegos on his Rule 60(b) motion. Accordingly, the request to appoint counsel will be denied.

**CONCLUSION**

The Court will deny Gallegos' motion to set aside the judgment and for appointed counsel in this civil case. As a result, Gallegos must comply with the Court's *Sealed Findings of Fact and Conclusions of Law* [Doc. 21 and *Default Judgment* [Doc. 22]. Although Gallegos must return his daughter to Castaneda in accordance with those documents, Gallegos is free to pursue the question of custody in the Mexican courts.

**IT IS THEREFORE ORDERED** that the *pro se* motion to set aside default judgment [Doc. 23] by Defendant, John Daniel Gallegos, is hereby **DENIED** and the *Order Staying Judgment* [Doc. 26] is **VACATED** and the stay is **LIFTED**.

_____
**UNITED STATES DISTRICT JUDGE**